JUSTICE LEAPHART
delivered the Opinion of the Court.
Petitioner, the State of Montana on relation of Attorney General Joseph P. Mazurek, filed with this Court an application for writ of supervisory control under Article VII, § 2(2) of the Montana Constitution and Rule 17, M.RApp.P. The State’s application requests that we address two orders of the Fourth Judicial District Court, Missoula County, granting the motions of defendant Michael Paul Johns (Johns) to admit certain evidence relating to the misconduct of the alleged victims under the Montana Rape Shield Law, § 45-5-511(2), MCA. Defendant Johns also filed a cross-petition for writ of supervisory control.
In its order of April 9, 1996, this Court accepted original jurisdiction over the issues raised by the State in its application for writ of supervisory control, declined to accept jurisdiction over the evidentiary-related issues raised in the cross-petition for writ of supervisory control, and declined original jurisdiction over Johns’ request to dismiss certain counts of the amended information.

Factual and Procedural Background

At the time of the alleged incidents, Johns and the victims, identified as K.C. and L.A., were students attending the University of Montana-Missoula. Johns is charged with two counts of felony sexual intercourse without consent and two counts of criminal endangerment. These counts arise from two separate incidents involving K.C. and L.A. Johns filed a motion seeking to introduce evidence relating to the prior sexual history of the alleged victims. Two pretrial hear *352 ings have been held in the respondent District Court pursuant to the Montana Rape Shield Law, codified at § 45-5-511(2), MCA. The District Court considered certain evidence relating to the past sexual conduct of K.C. and L.A. and determined that the evidence would be admissible at trial.
The State requests that this Court address the following decisions of the District Court:
(a) The respondent court intends to admit testimony from a witness named Bob Keissal that he observed L.A. sitting on the lap of, rubbing against, and fondling a person named Brad Becker on the night in which the conduct that is the subject of counts one and three of the amended information occurred.
(b) The respondent court intends to allow a witness named Ben Graham to testify that L.A. was “hitting on every guy in sight” and sitting on Brad Becker’s lap on the night in which the conduct that is the subject of counts one and three of the amended information occurred.
(c) The respondent court intends to allow a witness named Brad Woons to testify that after the conduct that is the subject of counts one and three of the amended information occurred, L.A. came into his dormitory room, eventually undressed, lay down on a bed in the dormitory room, and appeared to masturbate.
(d) The respondent court intends to allow a witness named Brian Mothershead to testify from personal knowledge that L.A., while in high school, became intoxicated and spent the night in a motel room, waking up unclothed and wrapped in a blanket in the company of several men the following morning.
(e) The respondent court intends to allow a witness named Shannon Sims to testify from personal knowledge to the same incident described in (d) above.
(f) The respondent court intends to allow witnesses Daryl and Jean Toews to testify that K.C. made and recanted false allegations of sexual assault against Chad Reddig.
This Court accepted jurisdiction over the issues raised in the State’s petition for writ of supervisory control.
This Court has stated that:
“Supervisory control is an extraordinary remedy, to be exercised only in extraordinary circumstances. We have said... that to justify such a writ an exigency or emergency must be shown to exist, or that a gross injustice would result from a denial of the writ, and *353 the absence of other adequate relief. ... [Supervisory control] has its own appropriate functions, and, without undertaking to define particularly what these functions are, we think one of them is to enable this court to control the course of litigation in the [district] courts where those courts are proceeding within their jurisdiction, but by mistake of law, or willful disregard of it, are doing a gross injustice, and there is no appeal or the remedy by appeal is inadequate....”
State ex rel. Forsyth v. District Court (1985), 216 Mont. 480, 484, 701 P.2d 1346, 1348 (quoting State ex rel. O’Sullivan v. District Court (1946), 119 Mont. 429, 431-32, 175 P.2d 763, 764); accord State ex rel. Mapes v. District Court (1991), 250 Mont. 524, 528-29, 822 P.2d 91, 94. In our order of April 9, 1996, we determined that this case implicates such “extraordinary circumstances” as are contemplated in Forsyth and Mopes, and, consequently granted the State’s petition. The State correctly notes that § 46-20-103, MCA, provides the scope of issues from which the State may appeal in a criminal case and that evidentiary rulings under the Rape Shield Law, § 45-5-511(2), MCA, are not included. See State ex rel. Dep’t of Justice v. District Court (1976), 172 Mont. 88, 93, 560 P.2d 1328, 1331 (discussing the appropriateness of the writ in the absence of an adequate remedy at law). Therefore, if the District Court erroneously admits this evidence at trial, the State has no adequate remedy on appeal.
In addition, the State asserts that the Rape Shield Law was enacted to protect victims from further trauma at trial by restricting the admissibility of evidence relating to the victim’s prior sexual conduct. Once a trial is held and the testimony has been presented in open court, the injury which the statute is intended to prevent will have been inflicted upon the victim. A later decision of this Court would be wholly ineffective in rectifying the injury to the victim. For these reasons we granted the State’s petition for writ of supervisory control.

Discussion

In reviewing a district court’s decisions regarding the admissibility of evidence relating to the extrinsic sexual conduct of sexual assault victims under § 45-5-511, MCA, we determine whether the district court abused its discretion. State v. Howell (1992), 254 Mont. 438, 445, 839 P.2d 87, 91, cert. denied, 507 U.S. 1036, 113 S.Ct. 1862, 123 L.Ed.2d 483 (1993); State v. Rhyne (1992), 253 Mont. 513, 518-19, 833 P.2d 1112, 1116. The State argues that the District Court’s rulings *354 on the admissibility of the testimony labeled as issues (a) through (f) violate Montana’s Rape Shield Law. Section 45-5-511, MCA, the Rape Shield Law, provides in relevant part:
(2) No evidence concerning the sexual conduct of the victim is admissible in prosecutions under this part except evidence of the victim’s past sexual conduct with the offender or evidence of specific instances of the victim’s sexual activity to show the origin of semen, pregnancy, or disease which is at issue in the prosecution.
(3) If the defendant proposes for any purpose to offer evidence described in subsection (2), the trial judge shall order a hearing out of the presence of the jury to determine whether the proposed evidence is admissible under subsection (2).
The State asserts, and we agree, that the statute recognizes only two instances in which the sexual conduct of a victim may be admitted and that neither circumstance is satisfied in the instant case. First, such evidence may be admitted where the conduct involves the defendant as a participant. Second, such evidence may be admitted where an issue exists as to the origin of semen, pregnancy or disease, and the victim’s sexual conduct is probative on that issue. Section 45-5-511(2), MCA.
In State v. Fitzgerald (1989), 238 Mont. 261, 263, 776 P.2d 1222, 1223, the defendant wanted to present testimony that the victim was a prostitute. Fitzgerald argued that he and the victim acted consensually and that the victim fabricated the rape story so that she would not have to face her pimp with no earnings for the evening. The district court refused to allow this line of questioning and we affirmed. Fitzgerald, 776 P.2d at 1223. Like Johns in the present case, Fitzgerald asserted that this line of questioning was relevant to the victim’s veracity and essential to his right of confrontation. This Court, however, has repeatedly rejected this assertion. State v. Higley (1980), 190 Mont. 412, 422-23, 621 P.2d 1043, 1050. In Higley we stated that “rules limiting inquiry into sexual conduct of the victim are essential to preserve the integrity of the trial and to prevent it from becoming a trial of the victim.” Higley, 621 P.2d at 1050-51. This Court has consistently upheld the exclusion of prior sexual conduct evidence rejecting claims that the Sixth Amendment of the United States Constitution and Article II, § 24 of the Montana Constitution guarantee the defendant the right to introduce such evidence. Howell, 839 P.2d at 91; Higley, 623 P.2d at 1050. We have held that the Sixth Amendment right of confrontation is not absolute and that the Rape *355 Shield Law serves a compelling state interest in preventing rape trials from becoming trials on the prior sexual conduct of the victims. Howell, 839 P.2d at 91; Fitzgerald, 776 P.2d at 1223-24. In balancing the rights of victims and the rights of the defendant we have stated that:
“The Sixth Amendment is not absolute, and ‘may bow to accommodate other legitimate interests in the criminal trial process.’ [Chambers v. Mississippi (1973), 410 U.S. 284, 295, 93 S.Ct. 1038, 1046, 35 L.Ed.2d 297, 309.] The rape shield statute has been upheld as a legitimate interest justifying curtailment of the constitutional right to confront witnesses.”
State v. Steffes (1994), 269 Mont. 214, 230, 887 P.2d 1196, 1206 (quoting Howell, 839 P.2d at 91).
Although the testimony outlined in issues (a) through (c) all relates to victim L.A.’s sexual conduct on the date of the alleged incident, none of it involves defendant Johns as a participant nor is there an issue relating to semen, pregnancy or disease. In this case, as in Fitzgerald, “neither of the two statutory exceptions applies ....” Fitzgerald, 776 P.2d 1223. Accordingly, we conclude that the District Court abused its discretion in finding the evidence referred to in issues (a) through (c) to be admissible. The testimony is inadmissible under § 45-5-511(2), MCA.
The testimony outlined in issues (d) and (e) relates to incidents that occurred on dates prior to the dates of the alleged incidents. Specifically, the testimony relates to L.A.’s conduct while in high school. The State asserts, and we agree, that this testimony also violates § 45-5-511(2), MCA. The District Court determined that the testimony of Brian Mothershead, a high school classmate of L.A.’s, would be admissible if based on his personal knowledge and that the testimony of Shannon Sims, another classmate, would also be admitted. As in issues (a) through (c), Mothershead’s and Sims’ testimony would not relate to events in which defendant Johns was a participant nor would it relate to semen, pregnancy or disease. Rather, it relates to alleged prior sexual acts which tend to impugn L.A.’s reputation. This is precisely the type of testimony that the Rape Shield Law was designed to prohibit. Fitzgerald, 776 P.2d at 1224; Higley, 621 P.2d at 1050-51. The victim’s prior sexual conduct is not on trial. Thus, we conclude that the District Court abused its discretion in determining that this testimony would be admissible.
In issue (f), the State requests that this Court review the District Court’s decision to allow the testimony of Daryl and Jean *356 Toews. The Toews would testify that K.C. had made and recanted false allegations of sexual assault against her former husband, Chad Reddig. Again, the State asserts that this testimony would violate § 45-5-511(2), MCA. Johns responds that the testimony should be allowed based on this Court’s opinion in State v. Anderson (1984), 211 Mont. 272, 686 P.2d 193. In Anderson, we stated that:
[E]vidence of prior false accusations of the same sexual crime involved in a more current case, while not admissible for the purpose of impeaching the general character or reputation of the witness, may be admissible if probative of the witness’ state of mind, motive, or biases with respect to making the more current accusations.
Anderson, 686 P.2d at 199 (citing People v. Hurlburt (Cal. Ct. App. 1958), 333 P.2d 82, 87). In Anderson, we recognized that most jurisdictions have determined that “evidence of prior false charges may often be probative of the complaining witness’ specific reputation for untruthfulness.” Anderson, 686 P.2d at 199 (surveying other jurisdictions and collecting cases). We determined that “evidence of similar sexual offenses claimed to have been committed against the victim by other individuals is admissible if the offenses were proven or admitted to be false.” Anderson, 686 P.2d at 200. The offered evidence must be “narrowed to the issue of the complaining witness’ veracity.” Anderson, 686 P.2d at 200 (citing Hall v. State (Ind. Ct. App. 1978), 374 N.E.2d 62). In addition, we cautioned that:
If the charges are true or reasonably true, then evidence of the charges is inadmissible, mainly because of its prejudicial effect [citation omitted] but certainly because of its irrelevance to the instant proceeding. [Citations omitted.] Furthermore, evidence of prior charges which have not been adjudicated to be true or false; i.e., which may be true or false is also inadmissible, primarily because its introduction circumvents the interest in preserving the integrity of the trial and preventing it from becoming a trial of the victim.
Anderson, 686 P.2d at 200. In Anderson, we directed that a separate hearing outside the jury’s presence should be held in order to establish whether there was sufficient support for the contention that the prior allegations were false. Anderson, 686 P.2d at 200 (citing People v. Sheperd (Colo. Ct. App. 1976), 551 P.2d 210, 212). In Anderson, such a hearing had been held in the district court and we determined that the court did not err in excluding the evidence. We *357 noted that the charges had never been tested for their truth or falsity and were still disputed at the time of trial. Anderson, 686 P.2d at 200.
Contrary to Justice Nelson’s concurring and dissenting opinion, we have not expanded our prior holding in Anderson. The dissent argues that, under Anderson, in order to be admissible in the present proceeding, prior charges must have been actually filed against another person as a result of the victim’s accusations and, secondly, that there must have been, separate and distinct from the present proceeding, a prior adjudication that the charges were false. As to the first prong, an actual filing of charges, although Anderson involved a situation where actual charges had been filed and later dismissed, the opinion does not state that such an actual filing is a prerequisite to admissibility. As to a requirement of a prior adjudication in a separate proceeding, Anderson clearly does not require this. Rather, Anderson requires that the district court conduct a hearing outside the presence of the jury to determine whether there is sufficient evidence to support the contention that the allegation was false. Such an in camera determination of falsity satisfies the “adjudication” requirement in the absence of a prior adjudication in a separate proceeding. In Anderson, the district court determined that there was not sufficient support to make a determination of falsity. Thus, it refused to allow evidence of the alleged false accusation and the issue did not go to the jury. However, if the district court, in its in camera hearing, had determined that the prior charges were false, Anderson envisions that the matter would then have been presented to the jury for its judgment. The present case, in which the District Court determined that the prior accusation was false, is a variation of the process contemplated by this Court in Anderson.
In Anderson, we recognized that “limiting or barring a defendant’s cross-examination of a complaining witness in a sex crime case where there is evidence of prior false accusations restricts defendant’s enjoyment of the worth of his constitutional rights to confront witnesses.” Anderson, 686 P.2d at 200 (citing Hughes v. Raines (9th Cir. 1981), 641 F.2d 790, 792); State v. Corella (Haw. Ct. App. 1995), 900 P.2d 1322, 1327-28. Thus, if this Court were to adopt the approach suggested by Justice Nelson’s concurring and dissenting opinion, without citation to any authority, and approve of such a restriction on cross-examination of a complaining witness, we would arguably infringe upon the defendant’s Sixth Amendment right to confront witnesses. See Hughes, 641 F.2d at 792.
*358 In Anderson this Court did not set forth any procedure to govern the in camera hearing or the presentation of “prior false accusation” evidence to a jury. We take this opportunity to do so. In Miller v. State (Nev. 1989), 779 P.2d 87, 90, the Nevada Supreme Court was confronted with a question as to the admissibility of evidence relating to the complaining witness’ allegations of prior sexual assault and sexual abuse which the defendant asserted were false. The Nevada Supreme Court determined that “a threshold inquiry must establish both the fact of the accusations and the falsity thereof even before defense counsel launches into cross-examination.” Miller, 779 P.2d at 90 (citation omitted). Accordingly, the Nevada Supreme Court outlined the following procedure that must be followed if a defendant in a sexual assault case proposes to cross-examine the complaining witness about prior and allegedly false accusations of sexual abuse or assault and to introduce corroborative evidence. First, prior to such questioning, counsel must file written notice of his intent. Then, as this Court recognized in Anderson, the trial court must order a hearing outside the presence of the jury to determine the propriety of such questioning and the admissibility of the corroborative evidence. The Nevada Supreme Court directed that:
In making such a determination, the defendant must establish, by a preponderance of the evidence, that (1) the accusation or accusations were in fact made; (2) that the accusation or accusations were in fact false; and (3) that the evidence is more probative than prejudicial. [Citation omitted.] If the defendant satisfies these three conditions, the trial court will authorize cross-examination of the complaining witness concerning the alleged false accusations. The defendant may thereafter present extrinsic evidence of the false accusations only if the complaining witness denies or fails to recall having made such accusations.
Miller, 779 P.2d at 90. The foregoing analysis is consistent with this Court’s holdings in both Anderson and Higley in that it seeks to prevent the trial from becoming a trial of the victim. Accordingly, we adopt the reasoning and procedures of the Nevada Supreme Court as set forth in Miller.
In the instant case, the District Court held a hearing outside the presence of the jury and determined, first, that K.C. had made accusations of rape and, second, that KC.’s prior allegations of rape against Reddig were false. The court stated that “[biased on the testimony of Mr. and Mrs. Thews and Arthur Gray, the Court finds that there were false allegations made by [K.C.] against Chad Reddig *359 and Brian Miller, and testimony regarding those allegations is admissible at the trial of this case.” The District Court did not determine, however, whether the proffered evidence would be more probative than prejudicial as the third prong of the test we now adopt requires. Accordingly, we remand this case to the District Court for this determination. If the District Court determines that the evidence is more probative than prejudicial, as the court recognized in Miller, extrinsic evidence of the false accusations may be presented only if the complaining witness denies or fails to recall having made such accusations. Miller, 779 P.2d at 90.
As we recognized in Anderson, this type of evidence has the potential to transform the trial from a trial of the defendant for specific criminal acts into a trial of the victim or victims. Accordingly, such evidence of prior sexual assault allegations adjudicated to be false or admitted to be false must be narrowed to the issue of the complaining witness’ veracity. Anderson, 686 P.2d at 200 (citing Hall, 374 N.E.2d at 65).
The orders of the District Court dated November 27, 1995 and December 7, 1995, holding the testimony described in issues (a) through (e) to be admissible are reversed, while the decision of the District Court holding the testimony described in issue (f) to be admissible is remanded with direction to determine whether the proffered evidence is more probative than prejudicial. This case is remanded to the District Court for proceedings consistent with this opinion.
CHIEF JUSTICE TURNAGE and JUSTICE ERDMANN concur.