No. 97-043

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


STATE OF MONTANA,

Plaintiff and Respondent,

v.

MICHELLE RENE NEWILL,

Defendant and Appellant.


APPEAL FROM:    District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable John S. Henson, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

Morgan M. Modine; Modine & Thompson, Missoula, Montana

For Respondent :

Hon. Joseph P. Mazurek, Attorney General
Jennifer Anders, Assistant Attorney General, Helena, Montana

Robert L. "Dusty" Deschamps, III, Missoula County Attorney,
Betty Wing, Deputy Missoula County Attorney, Missoula, Montana


Submitted on Briefs: September 11, 1997

Decided:    October 10, 1997
Filed:


_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Michelle Newill (Newill), appeals from the decision of the Fourth Judicial District Court, Missoula County, denying Newill's motion to suppress evidence. Newill asserts that hospital records regarding her blood alcohol content (BAC) should have been suppressed by the District Court because the blood samples used to determine her BAC were not taken in accordance with 61-8-402, MCA, (implied consent statute). The District Court held that the blood test conducted by the hospital falls within the "other competent evidence" inclusion of 61-8-404(3), MCA, and denied the motion to suppress. We affirm.

## Issue Presented

Did the District Court err in denying Newill's motion to suppress evidence by holding that the results of a medical blood test used to determine Newill's BAC fall within "other competent evidence" under 61-8-404(3), MCA?

## Background

Newill suffered severe injuries in a motor vehicle accident on January 24, 1996. At the scene of the accident, emergency response unit personnel found an empty beer can in Newill's lap and smelled alcohol on her breath. After extracting Newill from her vehicle, emergency personnel transported her to St. Patrick Hospital for treatment. At the hospital, laboratory technician, Martin Guthrie (Guthrie), was directed by the attending physician to take a blood sample for medical diagnostic and treatment purposes. In addition, the hospital tested Newill's BAC, as is normal hospital procedure when physicians believe alcohol is involved. The hospital records, showing the BAC results of Newill's blood sample, indicated that her BAC was 0.2050, well over the 0.10 statutory threshold for an inference of intoxication.

During questioning at the hospital, Newill admitted to the interviewing officer that she had been drinking. She also gave the officer permission to the have a blood sample taken for determining her BAC. However, after four attempts, the nurse directed by the officer to take the blood was not able to obtain a sample, so the officer decided to cease any further attempts.

The officer investigating the accident cited Newill for violation of 61-8-401, MCA, driving under the influence of alcohol. Newill appeared in Missoula County Justice Court and entered a plea of not guilty. The State of Montana obtained an investigative subpoena ordering St. Patrick Hospital to produce Newill's emergency room records, including the analysis of all blood samples. (We note that this Court recently

determined
that medical records are protected under the right of privacy guarantee of Article II,
Section 10 of the Montana Constitution and therefore are only discoverable through an investigative subpoena upon a showing of a compelling state interest. State v. Nelson
(Mont. 1997), 941 P.2d 441, 448-49, 54 St.Rep. 576, 580-81. The right of privacy issue, however, has not been raised in the context of this appeal.) Newill filed a motion
to suppress the hospital records containing the BAC results asserting that the records did
not comport with the foundational requirements of the implied consent statute. The Justice of the Peace granted the motion to suppress, and the State of Montana appealed
to the District Court for a trial de novo. Again, Newill moved to suppress the hospital
records. As a result, the parties briefed the evidentiary issue, and the District Court held
a suppression hearing.

At the hearing, Guthrie testified that he used standard hospital procedure when he
drew Newill's blood and that the sample was analyzed by state-of-the-art equipment which is tested for quality control every 24 hours. He also testified that the computer
printout containing the results of the blood test is a record that the hospital keeps in the
normal course of business. The District Court denied Newill's motion to suppress the hospital record of her BAC. Newill then entered into a plea agreement with the State of
Montana whereby Newill agreed to enter an "Alford" plea to a violation of  61-8-406, MCA, driving with a blood alcohol level of 0.10 or more. Newill reserved her right to
appeal the District Court's denial of her motion to suppress and the District Court stayed
execution of Newill's sentence pending the outcome of this appeal.

Standard of Review

The standard of review of a district court's denial of a motion to suppress is whether the court's findings were clearly erroneous and whether the findings were correctly applied as a matter of law. State v. Siegal (Mont. 1997), 934 P.2d 176, 180,
54 St.Rep. 158, 160-61.

Discussion

Newill contends that the District Court erred in denying her motion to suppress because the blood test results admitted into evidence were not obtained in compliance with Montana law. Specifically, the implied consent statute requires that testing of a
person's blood be administered at the direction of a peace officer who has reasonable grounds to believe the person has been driving under the influence of alcohol. Section
61-8-402, MCA. In addition,  61-8-404(1)(b)(ii), MCA, allows a report of the results
of any test of a person's blood into evidence if the test is conducted by a person

competent to withdraw the blood. Finally, 61-8-405, MCA (1995), states the competency requirements: "[o]nly a physician or registered nurse or other qualified person under the supervision and direction of a physician or registered nurse acting at the request of a peace officer may withdraw blood for the purpose of determining any measured amount or detected presence of alcohol in the person." Relying on these statutory provisions, Newill contends that the blood samples taken by the hospital for medical purposes, and not at the behest of a peace officer, should not be admitted as evidence of her BAC. The State of Montana asserts that since the blood samples were taken for medical treatment and diagnostic purposes, the tests do not need to be conducted in accordance with the criteria of the implied consent statute.

This Court has not had an opportunity to determine the applicability of the implied consent statute criteria to blood samples drawn for medical reasons rather than at the request of a peace officer. The West Virginia Supreme Court of Appeals (West Virginia court) decided a similar issue under almost identical facts in State ex rel. Allen v. Bedell (W.Va. 1994), 454 S.E.2d 77. In Bedell, the state offered results of a medical diagnostic blood test as evidence of Petitioner's, BAC. Like Newill, the Petitioner in Bedell claimed that the blood sample, taken for treatment and diagnostic purposes, should be suppressed because it was not taken in accordance with West Virginia statutory law. Bedell, 454 S.E.2d at 78. West Virginia, like Montana, has an implied consent statute that provides a method for taking blood samples for purposes of determining BAC. However, the West Virginia court determined that the requirements of the implied consent statute had no application to the diagnostic blood test and did not serve as a prohibition to its admissibility. Bedell, 454 S.E.2d at 80. The West Virginia court reasoned that the legislature's specific inclusion of authorization for law enforcement to direct blood tests to be taken "does not intimate a legislative intent to disallow . . . evidence of alcohol content obtained by medical personnel in the course of treatment." Bedell, 454 S.E.2d at 79. We agree with the reasoning of the West Virginia court in Bedell. The fact that the Montana legislature has imposed specific requirements for the taking of blood samples at the request of law enforcement, does not mean blood samples drawn for medical reasons must comply with the same criteria or be excluded as evidence.

Moreover, the Montana legislature, in addition to specifically providing methods by which law enforcement can obtain evidence of the BAC of an individual suspected of driving while under the influence of alcohol, also provided broad evidentiary provisions for other evidence. For example 61-8-404, MCA (1995), which controls the admissibility of evidence in a prosecution for driving under the influence provides

at (1)(a), "evidence of any measured amount or detected presence of alcohol or drugs in the person at the time of the act alleged, as shown by an analysis of the person's blood, breath, or urine, is admissible." Furthermore, subsection (3) states that "[t]he provisions of this part do not limit the introduction of any other competent evidence bearing on the question of whether the person was under the influence of alcohol . . . ." Section 46-8-404(3), MCA (1995). We determine that the criteria for admissibility under subsection (1)(b), relating to blood tests administered under the implied consent statute, do not apply to diagnostic blood tests taken by a hospital or treating physician. Rather, subsections (1)(a) and (3) allow the admission of such medical evidence.

Having determined that the foundational requirements of the implied consent statute did not apply, the only issue remaining for the District Court was whether the medical blood test taken at the hospital was "competent" evidence for purposes of admissibility under 61-4-404(3), MCA. Guthrie demonstrated his competency to withdraw the blood sample. He testified that he is a registered medical laboratory technologist and his skill at taking blood samples surpasses that of an average emergency room nurse. In addition, Guthrie testified that the testing equipment at St. Patrick Hospital is state-of-the-art and a quality control check is performed on the equipment every 24 hours. Furthermore, St. Patrick Hospital's lab testing standards regarding variation exceed the standards imposed by the State Department of Health.

The only discrepancy in the hospital records regarded the time of the collection of Newill's blood. The hospital records noted the time of collection as 1:00 a.m. However, it is uncontroverted that Newill was still in transit to the hospital at that time. Guthrie explained that he was called to the emergency room at 1:05 a.m. and arrived at 1:10 a.m. He testified that all blood drawing procedures were accomplished at one time, and did not exceed a fifteen minute period. Guthrie explained that the 1:00 a.m. designation was likely a typographical error. The District Court found that the discrepancy was adequately explained by Guthrie and concluded that the typographical error did not effect the competency of the hospital record. We conclude that the blood test taken at the direction of the treating physician was admissible as other competent evidence bearing on

whether Newill was under the influence of alcohol.  Therefore, the District Court did not
err in denying Newill's motion to suppress.  Affirmed.

                                    /S/   W. WILLIAM LEAPHART


                            We concur:

                        /S/   KARLA M. GRAY
                         /S/   JIM REGNIER
                        /S/   JAMES C. NELSON
                      /S/   WILLIAM E. HUNT, SR.