IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 01-536

2001 MT 305

**ORDER AND OPINION**

STATE OF MONTANA, ex rel. MIKE McGRATH,

Attorney General for the State of Montana,

Relator,

v.

MONTANA TWENTY-FIRST JUDICIAL DISTRICT

COURT, THE HONORABLE JEFFREY H. LANGTON,

District Judge,

Respondent.

¶1 Before us is an original proceeding involving a petition for writ of supervisory control filed by the State of Montana and Attorney General Mike McGrath, respectfully, requesting that we assume supervisory control and direct the Montana Twenty-First Judicial District Court, the Honorable Jeffrey H. Langton, to set aside an order of suppression excluding the admission of a blood test and its results obtained for medical treatment purposes bearing on the question of whether Defendant Linda Llewellyn ("Llewellyn") was under the influence of alcohol on September 28, 2000.

¶2 The petition for writ of supervisory control presents the following issues:

¶3 1. Whether we should exercise jurisdiction in this matter?

¶4 2. Whether the District Court erred in suppressing Llewellyn's blood test results obtained by medical authorities for emergency treatment purposes when Llewellyn refused to consent to a blood test pursuant to a police officer's request under Montana's implied consent statute?

¶5 We assume supervisory control, reverse the District Court's Order granting Llewellyn's motion to suppress and remand for further proceedings.

## BACKGROUND

¶6 On September 28, 2000, Llewellyn allegedly rear-ended another vehicle stopped at a red light at the intersection of Eastside Highway and Highway 93 in Ravalli County. Llewellyn, who suffered significant injuries as a result of the accident, refused to submit to a breath test at the scene. She was then transported to the emergency room of the Community Medical Center in Missoula County for treatment. While undergoing treatment, Llewellyn was asked by a Montana highway patrol officer to provide a blood sample for analysis pursuant to § 61-8-402, MCA (1999). Llewellyn refused and her refusal was documented by the officer. However, during the course of emergency room treatment, blood was drawn from Llewellyn upon the order of a physician for purposes of medical diagnosis and treatment. The lab tests revealed a blood alcohol content above the legal allowable limit. The results were obtained by the prosecution pursuant to an investigative subpoena.

¶7 Llewellyn filed a motion to suppress the admission of the blood test obtained for medical diagnosis and treatment purposes claiming that the State could not show compliance with the required administrative procedures in the collection of the blood test for evidentiary purposes; and that she withdrew her consent to a blood test. The State responded and contended that blood tests taken for medical diagnosis and treatment purposes are admissible as "other competent evidence" pursuant to our decision in *State v. Newill* (1997), 285 Mont. 84, 946 P.2d 134, and § 61-8-404, MCA (1999). The District Court granted Llewellyn's motion concluding our decision in *Newill* was distinguishable from the case at hand since the defendant in *Newill* consented to a blood test unlike Llewellyn; and thus, admitting Llewellyn's blood test results obtained for medical treatment purposes would "render null and void her right to refuse consent" provided by § 61-8-402(4), MCA (1999). The District Court then concluded that "other competent evidence" could include eye witness testimony concerning Llewellyn's manner of driving, appearance, gait, breath smell, etc., but could not include blood analysis for medical

treatment purposes when Llewellyn had previously exercised her statutory right and refused to submit to a blood test for purposes of determining her blood alcohol content ("BAC"). The District Court concluded that to allow the admission of such evidence would permit an end run around the implied consent statutes which the Montana Legislature could not have intended. The District Court did not address whether applicable administrative procedures were followed in collecting Llewellyn's blood test. Subsequently, the State filed the petition for writ of supervisory control before us contending that the District Court's order of suppression is directly contrary to our decision in *Newill*.

## STANDARD OF REVIEW

¶8 Where the facts are not in dispute, our review of a district court's ruling on a motion to suppress is plenary as to whether the district court correctly interpreted and applied the law. *State v. Devlin*, 1999 MT 90, ¶7, 294 Mont. 215, ¶7, 980 P.2d 1037, ¶7 (citation omitted).

## DISCUSSION

## ISSUE 1

¶9 Whether we should exercise jurisdiction in this matter?

¶10 Supervisory control is appropriate when a "district court is proceeding based on a mistake of law which, if uncorrected, would cause significant injustice, and where the remedy by appeal is inadequate." *Park v. Montana Sixth Judicial District Court*, 1998 MT 164, ¶13, 289 Mont. 367, ¶13, 961 P.2d 1267, ¶13. Given the State's limited ability to appeal an evidentiary ruling, we have previously exercised supervisory control to prevent the introduction of evidence where correction of the ruling by a later court decision would be ineffective. *State ex rel. Mazurek v. District Court of Montana Fourth Judicial District* (1996), 277 Mont. 349, 353, 922 P.2d 474, 477. As subsequently discussed herein, we conclude that the District Court is proceeding under a mistake of law. Additionally, if the District Court's mistake of law is left uncorrected, the State would be without an adequate remedy on appeal. Accordingly, we grant the State's petition and accept original jurisdiction over this matter pursuant to Article VII, Section 2(2), Montana Constitution, and Rule 17(a), M.R.App.P.

# ISSUE 2

¶11 Whether the District Court erred in suppressing Llewellyn's blood test results obtained by medical authorities for emergency treatment purposes when Llewellyn refused to consent to a blood test pursuant to a police officer's request under Montana's implied consent statute?

¶12 Section 61-8-402, MCA (1999), commonly known as Montana's implied consent statute, governs the consensual collection of blood or breath test samples from persons arrested for driving under the influence of alcohol or drugs pursuant to a request from a peace officer. Subsection (10) expressly states that "[t]his section does not apply to blood . . . tests, samples, and analyses used for purposes of medical treatment or care of an injured motorist . . . ." In *Newill* we specifically addressed the applicability of Montana's implied consent laws relative to blood drawn for medical diagnosis and treatment of an injured motorist and concluded § 61-8-402, MCA (1995), does not apply to blood tests taken for medical treatment purposes.

¶13 The Defendant in *Newill* suffered head injuries in an automobile accident. During treatment at the hospital, the attending physician took a blood sample for diagnostic and treatment purposes as part of normal hospital procedure. Newill had previously consented to a blood sample under implied consent procedures when requested by an officer, but was medically unable to give one. Evidence of Newill's blood analysis taken by the physician was admitted into evidence and Newill appealed. Newill contended that the blood samples taken for medical purposes should not be admitted as evidence of her blood alcohol content.

¶14 We determined in *Newill* that the Montana Legislature had provided evidentiary provisions for the admissibility of blood tests taken for medical treatment purposes in § 61-8-404(1)(a), MCA (1995), which provides "evidence of any measured amount or detected presence of alcohol or drugs in the person at the time of the act alleged, as shown by an analysis of the person's blood . . . is admissible"; and § 61-8-404(3), MCA (1995), which states that "[t]he provisions of this part do not limit the introduction of any other competent evidence bearing on the question of whether the person was under the influence of alcohol . . . ." *Newill*, 285 Mont. at 88-89, 946 P.2d at 136-137. We also determined that the foundational requirements of § 61-8-404(1)(b), MCA (1995), were inapplicable to blood tests taken for medical treatment purposes since those requirements applied only to tests administered pursuant to § 61-8-402, MCA (1995). *Newill*, 285 Mont. at 89, 946 P.2d

at 137. Then, the only question left for us to determine in *Newill* was whether the blood test taken at the hospital pursuant to a request by Newill's treating physician was admissible as "other competent evidence" under § 61-8-404(3), MCA (1995). Accordingly, we examined the skills of the medical personnel involved and concluded that the blood test was admissible as other competent evidence bearing on whether Newill was under the influence of alcohol. Newill, 285 Mont. at 89, 946 P.2d at 137.

¶15 We point out that § 61-8-404(1)(a), MCA (1995), was amended in 1999 substituting the language stating "the act alleged" to "a test". In addition, § 61-8-404(1)(b), MCA (1995), was amended in 1997, deleting the provision "administered under 61-8-402". Section 61-8-404(1)(b), MCA (1999), states "a report of the facts and results of one or more tests of a person's blood or breath is admissible in evidence if . . . ." Consequently, the foundational requirements of § 61-8-404(1)(b)(ii), MCA (1999), and § 61-8-405(1), MCA (1999), as necessitated by the competency requirement of § 61-8-404(1)(b)(ii), MCA (1999), are applicable to the case at hand.

¶16 Although the statute was amended, the resolution of this petition is controlled by our decision in *Newill*. While it is true, as the District Court correctly recognized, that Newill did provide consent to the officer to have a blood sample taken for determining her BAC and Llewellyn did not, the criteria for admissibility under § 61-8-402, MCA (1999), relating to blood tests administered under the implied consent statute are inapplicable to diagnostic blood tests taken by a hospital or treating physician. Therefore, we see no legally relevant

distinction between the facts presented here and the facts we confronted in *Newill*. We thus conclude that the District Court's order of suppression conflicts with our decision in *Newill*.

¶17 Here, there are additional competency requirements, arising from the 1997 amendment to § 61-8-404, MCA (1995), that were not at issue in *Newill*. The foundational requirements of § 61-8-404(1)(b)(ii), MCA (1999), and § 61-8-405(1), MCA (1999), must be applied to the case at hand to ascertain competency of the evidence. We note that the administration of a blood test for medical treatment purposes need not be conducted at the request of a peace officer as required by § 61-8-405(1), MCA (1999), since such a requirement is only applicable to blood tests conducted pursuant to § 61-8-402, MCA (1999), whereby § 61-8-402(2)(a), MCA (1999), requires that blood tests administered pursuant to that section "must be administered at the direction of a peace officer". Further,

a defendant charged with driving under the influence of alcohol is entitled to procedural safeguards contained in the Administrative Rules of Montana. *See State v. Incashola*, 1998 MT 184, ¶8, 289 Mont. 399, ¶8, 961 P.2d 745, ¶8 (citation omitted). Accordingly, the Administrative Rules of Montana, specifically Rule 23.4.220, ARM, regarding the collection of blood samples for drug and/or alcohol analysis must be applied to the case at hand to determine if the blood test is competent evidence. However, the requirement of Rule 23.4.220(1), ARM, that a blood sample be collected "upon written request of a peace officer or officer of the court" does not apply to a blood test conducted for medical treatment purposes, as that requirement applies to blood tests conducted pursuant to § 61-8-402, MCA (1999).

¶18 Hence, the question remaining is whether the medical blood test taken for medical treatment purposes is "competent" evidence for purposes of admissibility under § 61-4-404 (3), MCA (1999). The District Court made no determination whether the evidence was competent pursuant to the requirements of § 61-8-404(1)(b)(ii), MCA (1999), § 61-8-405, MCA (1999), and the Administrative Rules of Montana. Consequently, we are unable to reach a determination of the question presented by § 61-4-404(3), MCA (1999). Thus, we remand this case for such determination by the District Court. *Therefore,*

¶19 IT IS HEREBY ORDERED that the petition for writ of supervisory control is GRANTED and that this case is remanded for further proceedings consistent with this Opinion.

¶20 The Clerk of Court is directed to mail a copy of this Order to all counsel of record and the Honorable Jeffrey H. Langton.

DATED this 28th day of December, 2001.

/S/ KARLA M. GRAY

/S/ JIM REGNIER

/S/ JAMES C. NELSON

/S/ PATRICIA COTTER

/S/ W. WILLIAM LEAPHART

/S/ JIM RICE

Justice Terry N. Trieweiler concurring in part and dissenting in part.

1. ¶I concur with that part of the majority opinion which concludes that the foundational requirements found at § 61-8-404(1)(b)(ii), MCA (1999), and § 61-8-405(1), MCA (1999), are applicable to evidence of blood alcohol content regardless of whether the source is blood drawn pursuant to § 61-8-402, MCA, or for purposes of medical treatment. I would add that compliance with applicable administrative regulations is also necessary.

2. ¶I dissent from that part of the majority opinion which concludes that blood test results obtained by medical providers are admissible to prove operation of a motor vehicle while under the influence of alcohol or drugs even though the motorist from whom the blood was drawn refused to submit to similar tests when requested to do so by a peace officer and suffered the consequences of that refusal. I would affirm the District Court and reverse our prior decision in *State v. Newill* (1997), 285 Mont. 84, 946 P.2d 134.

3. ¶I conclude that § 61-8-402, MCA, requires consent of a driver suspected of operating a motor vehicle under the influence of alcohol before tests can be administered to prove the presence of alcohol or drugs in a person's body. The consequences for denying that refusal are set forth in § 61-8-402(4), MCA. To hold, as the majority has done, that the consent requirement can be circumvented by going to the hospital and subpoenaing records of blood test results drawn without the driver's consent renders the procedural requirements in § 61-8-402, MCA, and the sanctions that it provides for failure to give consent meaningless. I would also conclude that the provision in subparagraph (10) which provides that this section does not apply to blood drawn for purposes of medical treatment refers to the assumption of consent provided for in subparagraph (1) and the sanctions for withdrawal of that assumed consent in subparagraph (4). To interpret subparagraph (10) as the majority does renders the statute internally inconsistent.

4. ¶Finally, I disagree that § 61-8-404(3), MCA, provides any comfort to the majority's position. Section 61-8-404, MCA, has simply been enacted to provide that the blood or breath evidence consented to in § 61-8-402, MCA, is admissible in a judicial proceeding if the prescribed procedures are followed and the necessary foundation

for admissibility is laid. Subparagraph (a) refers to any evidence of the measured amount of alcohol or drugs present and subparagraph (b) refers to a report of blood or breath test results. All of § 61-8-404, MCA, other than subparagraph (3), refers to blood or alcohol tests for the presence of alcohol in a person's body. Therefore, when subparagraph (3) refers to "any other competent evidence," it necessarily refers to evidence other than breath or blood tests. For that reason, it cannot serve the purpose for which it is used by the majority.

5. ¶Therefore, I dissent from that part of the majority opinion which construes §§ 61-8-402 and -404, MCA, to permit the admission of blood test results taken for purposes of medical treatment from a motorist who has declined to submit to testing which would measure the presence of alcohol in that person's body and has already suffered the consequences for that refusal.

/S/ TERRY N. TRIEWEILER