
DA 10-0312

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 52

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

MICHAEL BRYAN BAZE,

      Defendant and Appellant.


APPEAL FROM:    District Court of the Sixteenth Judicial District,
                  In and For the County of Rosebud, Cause No. DC 2009-09
                  Honorable Joe L. Hegel, Presiding Judge


COUNSEL OF RECORD:

      For Appellant:

            Joslyn Hunt, Chief Appellate Defender, Shiloh Hernandez, Assistant
            Appellate Defender, Helena, Montana

      For Appellee:

            Steve Bullock, Montana Attorney General, Mardell Ployhar, Assistant
            Attorney General, Helena, Montana


                       Submitted on Briefs:  February 16, 2011

                               Decided:  March 22, 2011


Filed:

           _____
                        Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1    Michael Baze (Baze) appeals from an order of the Sixteenth Judicial District Court, Rosebud County, denying his motion to suppress the results of a blood test during his trial for driving under the influence of alcohol (DUI). We reverse and remand for a new trial.

## ISSUES

¶2    Baze raises four issues on appeal. However, a restatement of the dispositive issue is whether the District Court erred when it admitted the faxed report containing Baze's blood test results under M. R. Evid. 803(6), the business records hearsay exception. Since resolution of this issue is dispositive, we decline to address Baze's remaining three issues.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3    Around 7:00 p.m. on March 15, 2004, Baze was involved in a single-car rollover accident on Interstate 94 near Forsyth, Montana. While there is some dispute whether Baze drove off the road or was forced off the road by another vehicle, it is undisputed that an ambulance responded to the scene and transported Baze to Rosebud Health Care Center (RHCC) in Forsyth. Montana Highway Patrolman Steven Downs responded to the scene after Baze had been transported to RHCC. He then proceeded on to the RHCC emergency room. There, Trooper Downs interviewed Baze and, suspecting him of DUI, asked Baze to submit to a breathalyzer test. Baze refused. Since Baze was undergoing medical treatment, Trooper Downs did not arrest Baze, and instead cited Baze for DUI, driving with a suspended license, and failure to have insurance. Trooper Downs left

2

these citations that required Baze to appear in court on April 6, 2004, with Baze's personal belongings. Baze failed to appear. The State did not charge Baze with felony DUI until 2009. The parties stipulated at trial that the delay was attributable to both sides.

¶4 After Baze arrived at RHCC, phlebotomist and clinical laboratory scientist Margo Anderson (Anderson) drew a sample of Baze's blood. Because RHCC lacked the facilities to analyze blood samples for alcohol content, Baze's blood samples were sent to Deaconess Billings Clinic (Billings Clinic) for testing. According to a note at the bottom of a facsimile toxicology report dated March 17, 2004, which was sent from Billings Clinic to RHCC, the result of Baze's blood test was "called back by SKREZBLAK on 3/16/2004 8:03 P.M.," indicating Baze's blood alcohol content was 0.328. The faxed report was eventually incorporated into Baze's RHCC medical records. Before trial, Baze filed a motion requesting that the State provide discovery establishing the chain of custody of the blood evidence or that the court suppress the evidence. The District Court held a suppression hearing on November 9, 2009.

¶5 At the hearing, Baze argued that the faxed report was inadmissible as evidence unless the State established a chain of custody from the time the blood was drawn to when it was tested at Billings Clinic. The State countered that chain of custody was not required because the blood tests were conducted for medical purposes, not at the request of law enforcement. The State also argued, briefly, that the blood test was admissible under the business records hearsay exception. Anderson testified for the State that, consistent with the statements in the faxed report, she drew Baze's blood at 8:30 p.m. on

3

March 15, 2004, following specific medically recognized procedures and placed the vials in a cooler to await shipment to Billings via same-day courier. The State also presented testimony from RHCC's director of medical records, Claudia Kajin, who testified that its medical records are generated in the regular course of business. Neither the courier nor anyone from Billings Clinic testified about the handling or analysis of Baze's blood sample. No witness identified "Skrezblak," or testified as to receiving the Billings Clinic fax at RHCC.

¶6    Ultimately, the District Court denied Baze's motion to suppress, concluding that the chain of custody requirements for blood samples taken for medical purposes are not as strict as those taken at the request of police, and that the faxed report containing Baze's blood test result was admissible under M. R. Evid. 803(6), the business records hearsay exception. During the trial, Baze objected twice more to admission of the blood test, and both objections were overruled. Baze was convicted of felony DUI by a jury and sentenced to the Department of Corrections for thirteen months with recommended placement in the WATCh program. The District Court also imposed a five-year suspended sentence, fines and other costs. Baze timely appeals.

**STANDARD OF REVIEW**

¶7    We review a district court's ruling on a motion to suppress evidence to determine whether the findings of fact are clearly erroneous and whether the court correctly applied those findings as a matter of law. *State v. Schauf*, 2009 MT 281, ¶ 13, 352 Mont. 186, 216 P.3d 740. A finding is clearly erroneous if it is not supported by substantial evidence, if the trial court misapprehends the effect of the evidence, or if our review of

4

the record convinces us that a mistake has been committed. *State v. Weaver*, 2008 MT 86, ¶ 9, 342 Mont. 196, 179 P.3d 534. We review a district court's ruling on admissibility of evidence for abuse of discretion. *State v. Aakre*, 2002 MT 101, ¶ 8, 309 Mont. 403, 46 P.3d 648.

## DISCUSSION

¶8    *Issue: Did the District Court err when it admitted the faxed blood test results under M. R. Evid. 803(6), the business records hearsay exception?*

¶9    Prior to reaching the merits of this issue, we address the question of whether this issue was properly preserved for appeal. Both parties correctly note that this Court generally does not consider issues presented for the first time on appeal because it is "fundamentally unfair to fault the trial court for failing to rule on an issue it was never given the opportunity to consider." *State v. West*, 2008 MT 338, ¶ 16, 346 Mont. 244, 194 P.3d 683 (citing *Day v. Payne*, 280 Mont. 273, 276-77, 929 P.2d 864, 866 (1996)). However, the principal purpose of the timely-objection rule is judicial economy and "bringing alleged errors to the attention of each court involved, so that actual error can be prevented or corrected at the first opportunity." *West*, ¶ 17 (internal citations omitted). We have previously held we will not harshly apply the timely-objection rule for the sake of economy when its application is clearly at the expense of justice. *See State v. Montgomery*, 2010 MT 193, ¶ 13, 357 Mont. 348, 239 P.3d 929. Finally, "we have permitted parties to bolster their preserved issues with additional legal authority or to make further arguments within the scope of the legal theory articulated to the trial court." *Id.* at ¶ 12 (citations omitted).

¶10     Here, the State argues that Baze did not preserve his business record hearsay exception argument for appeal because he addressed, but did not adequately develop, that theory in the District Court. Baze concedes he did not fully develop this theory in the District Court, but asserts the reason was that the State provided notice it intended to introduce business records under M. R. Evid. 803(6), but did not indicate which documents it sought to admit. Moreover, Baze asserts that he objected to use of the business record hearsay exception in anticipation the State might try to use the exception to admit the faxed report. However, as both parties acknowledge in their briefs to this Court, neither party presented developed arguments regarding the business record hearsay exception. Nonetheless, the District Court developed its own theory and based its denial of Baze's motion to suppress the evidence in part upon a novel interpretation of the business records hearsay exception.

¶11     Fundamental unfairness to the District Court is not at stake here because it was the District Court, not the parties, which sua sponte resolved on the merits whether or not the faxed toxicology report was admissible via the business records hearsay exception. Baze and the State had the opportunity to address the question, the District Court had the opportunity to rule on it, and we have in front of us the benefit of the District Court's ruling. We conclude Baze's business record hearsay exception argument is not barred on appeal, and therefore, we turn to its merits.

¶12     "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." M. R. Evid. 801(c). "Hearsay is not admissible except as otherwise provided by statute,

6

these rules, or other rules applicable in the courts of this state. M. R. Evid. 802. M. R. Evid. 803 identifies those statements that are not excluded by the hearsay rule, even though the declarant is an available witness. The relevant text of the business records exception states:

> **(**6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnosis, made at or near the time of the acts, events, conditions, opinions, or diagnosis, if kept in the course of a regularly conducted business activity, *and if it was the regular practice of that business activity to make* the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

M. R. Evid. 803(6) (emphasis added). Business records are presumed reliable because: "1) employees *generating* these records are motivated to accurately prepare these records because *their employer's business depends on the records to conduct its business affairs*; and 2) the routine and habit of *creating* these records also lends reliability." *Bean v. Montana Bd. of Labor Appeals*, 1998 MT 222, ¶ 20, 290 Mont. 496, 965 P.2d 256 (emphasis added).

¶13 Our previous authority establishes that blood test results obtained by medical authorities for emergency treatment purposes may be admissible in a DUI prosecution when obtained through a valid subpoena, as medical records are generally considered constitutionally protected materials. *State v. Fregien*, 2006 MT 18, ¶ 11, 331 Mont. 18, 127 P.3d 1048 (citing *State v. Nelson*, 283 Mont. 231, 243-44, 941 P.2d, 445, 449 (1997)). In order to admit the blood test results into evidence during a DUI trial, the prosecution would also have to meet the admissibility requirements of § 61-8-404, MCA,

*State v. Newill*, 285 Mont. 84, 88-89, 946 P.2d 134, 136-37 (1997), and the Montana Rules of Evidence. *State v. McDonald,* 215 Mont. 340, 343-44, 697 P.2d 1328, 1330 (1985).

¶14    The parties do not dispute that the toxicology report faxed from Billings Clinic to RHCC containing Baze's test results is hearsay under the Montana Rules of Evidence; the report was an out of court statement offered to prove that Baze's blood alcohol content was greater than the legal limit. Rather, the argument centers on whether the report is admissible under M. R. Evid. 803(6), the business records hearsay exception. Baze argues that the State did not establish any of the foundational elements of the business record exception because it did not produce testimony from personnel from Billings Clinic, the sending business that generated the report. The State concedes it did not produce testimony from anyone at Billings Clinic, but adopts the District Court's reasoning that this does not bar admission of the report because some federal courts have expanded the business records hearsay exception by allowing testimony from a *receiving* business if that business integrated the report into its records and relied upon it.

¶15    In its order denying Baze's motion to suppress the faxed report, the District Court stated:

> Although it might be preferable that the State present evidence from the author of the report at Billings Clinic Lab, reports prepared by a third party may qualify as a business record under Rule 803(6) if the business integrated the document into its records and relied upon it, provided that circumstances support the trustworthiness of the document. *United States v. Adefehinti*, 510 F.3d 319, 326 (D.C. Cir. 2007). In this case, RHCC obtained and made the report a part of its business records and the testimony of RHCC employees is sufficient foundation under Rule 803(6),

M.R.Evid. There is no reason to believe that the sample or report were [sic] somehow mishandled or misidentified or is otherwise untrustworthy.

¶16 The District Court's reliance on *Adefehinti*, a D.C. Circuit Court case, to resolve admissibility in a Montana state court under the Montana Rules of Evidence was erroneous. In *Adefehinti*, the issue was whether or not the trial court erred in admitting into evidence loan documents on the basis of certificates pursuant to F. R. Evid. 902(11). F. R. Evid. 902(11) permits authentication of certified domestic records of regularly conducted activity that would otherwise be admissible under F. R. Evid. 803(6) if the evidence is accompanied by a written declaration of its custodian or other qualified person. F. R. Evid. 902(11); *Adefehinti*, 510 F.3d at 324. F. R. Evid. 902(11) "extends [F. R. Evid. 803(6)] by allowing a written foundation in lieu of an oral one." *Adefehinti*, 510 F.3d at 325. The D.C. Circuit Court went on to adopt the rule that "a record of which a firm takes custody is thereby 'made' by the firm within the meaning of [F. R. Evid. 902(11)] (and thus admissible if all the other requirements are satisfied)." *Id.* at 326. Montana has not adopted this expanded view of the business records hearsay exception and we decline to do so today.

¶17 F. R. Evid. 803(6) is similar—but not identical—to M. R. Evid. 803(6). F. R. Evid. 803(6) adds reference to F. R. Evid. 902(11):

(6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, *or by certification that complies with Rule 902(11), Rule*

9

*902(12), or a statute permitting certification,* unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

F. R. Evid. 803(6) (emphasis added). F. R. Evid. 902 is entitled "self-authentication" and states that "[e]xtrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to" that evidence listed in the rule's subsections.

¶18 While the Montana Rules of Evidence identify evidence that is self-authenticating in M. R. Evid. 902, the rules do not permit business records to be authenticated via a certificate of compliance. In short, Montana has no counterpart to F. R. Evid. 902(11). Therefore, reliance on *Adefehinti* is inapposite. We have held that hospital records and medical reports are "ordinarily not self-authenticating and are not admissible business records pursuant to Rule 902, M.R.Evid." *Pannoni v. Bd. of Trustees, Browning Sch. Dist. No. 9*, 2004 MT 130, ¶ 45, 321 Mont. 311, 90 P.3d 438 (citing *Palmer by Diacon v. Farmers Ins. Exch.*, 233 Mont. 515, 521, 761 P.2d 401, 405 (1998)).

> For the records to be admissible, the following foundational facts must be established through the custodian of the records or another qualified witness: (1) the records must have been made or transmitted by a person with knowledge at or near the time of the incident recorded; and (2) the record must have been kept in the course of a regularly conducted business activity.

*United States v. Ray*, 920 F.2d 562, 565 (9th Cir. 1990) (internal citation omitted).

¶19 Based on the record before us, the State failed to satisfy the foundational elements of M. R. Evid. 803(6), the business records hearsay exception. As noted above, this Rule requires the entity *creating* the business record—not the entity *receiving* it—to establish that the record was prepared in accordance with its regular and trustworthy business

10

practices. Because no testimony to this effect was presented by personnel from the Billings Clinic where the record was generated, the District Court erred in admitting into evidence the faxed toxicology report based on testimony of personnel from the receiving entity, RHCC.

**CONCLUSION**

¶20    For the foregoing reasons, we hold that the District Court's interpretation of M. R. Evid. 803(6) was erroneous, and it was therefore an abuse of discretion for the District Court to admit the faxed toxicology report containing the results of Baze's blood tests under M. R. Evid. 803(6).

¶21    Reversed and remanded for a new trial.

/S/ PATRICIA COTTER

We concur:

/S/ MIKE McGRATH
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS
/S/ BETH BAKER

11