DA 11-0044

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2012 MT 70A

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JEFFREY L. HARDMAN,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Twenty-Second Judicial District,
In and For the County of Stillwater, Cause No. DC 09-34
Honorable Blair Jones, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Joslyn Hunt, Chief Appellate Defender; Koan Mercer, Assistant Appellate
Defender; Helena, Montana

      For Appellee:

          Steve Bullock, Montana Attorney General; Micheal S. Wellenstein,
Assistant Attorney General; Helena, Montana

          John Petak III, Stillwater County Attorney; Columbus, Montana

Submitted on Briefs:  February 8, 2012
Decided:  April 2, 2012
Amended:  May 1, 2012

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1    Jeffrey L. Hardman was found guilty by a jury in the Twenty-Second Judicial District Court of deliberate homicide and tampering with evidence. The court sentenced Hardman to 110 years in prison with no parole eligibility for thirty years. Hardman appeals his conviction and seeks a new trial. On appeal, we consider the following dispositive issue:

¶2    *Whether the District Court made numerous erroneous evidentiary rulings amounting to cumulative error and requiring reversal.*

## PROCEDURAL AND FACTUAL BACKGROUND

¶3    At approximately 4:40 p.m. on October 15, 2009, near Molt, Montana, Hardman shot and killed his neighbor, Michael Blattie, on Blattie's front porch. The two had been at odds over a $35 loan that Hardman had made to Blattie. Hardman lent Blattie the money to repair Blattie's tractor, so that Hardman could then use the tractor to cut weeds around their adjoining properties. Several weeks passed and Blattie did not repair the tractor. Hardman phoned Blattie regarding the money and the tractor, but did not receive a response.

¶4    On the day of Blattie's death, Hardman left a threatening message on Blattie's cell phone. Later in the afternoon, Hardman had a heated telephone conversation with Blattie. Hardman then placed a handgun in the back side waist of his pants and went to Blattie's home. Hardman testified that as he stepped onto Blattie's porch, Blattie "came flying out of his house, slamming the screen door up against the wall and yelling." According to Hardman, a struggle ensued between the two men, with Blattie hitting

2

Hardman in the face. Hardman pulled out the gun, allegedly hoping that Blattie would back away upon seeing the weapon. Blattie then reached for the gun and, in the resulting struggle, fanned the hammer. The gun went off, shooting Blattie in the abdomen. Hardman testified that he did not intend to shoot Blattie. There were no other witnesses to the incident. Blattie was found dead on his porch a short time later, having bled to death. After leaving the scene, Hardman buried the gun in a nearby field.

¶5 At trial, the State alleged that Hardman intentionally killed Blattie because he was angry with him regarding the unpaid debt. Hardman maintained the shooting was accidental or, at worst, negligent. He claimed he armed himself only because he feared Blattie would attack him when confronted about the debt and he was too physically infirm to fight back.

¶6 Hardman initially lied to investigators about his involvement, and attempted suicide by overdosing on medication. Hardman finally met with a local pastor, Robert Griggs, and confessed to his role in the shooting. He later contacted the authorities and was charged both with deliberate homicide and with evidence tampering for burying the murder weapon, which was never recovered.

¶7 Hardman did not raise a justifiable use of force defense but claimed the shooting was accidental. He requested and received a jury instruction on negligent homicide. There were multiple objections and evidentiary rulings throughout the trial. The jury found Hardman guilty of one count of deliberate homicide and one count of tampering with the evidence. He timely appealed.

**STANDARD OF REVIEW**

¶8    We review evidentiary rulings for an abuse of discretion. *State v. Derbyshire*, 2009 MT 27, ¶ 19, 349 Mont. 114, 201 P.3d 811. "A court abuses its discretion if it acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice." *Derbyshire*, ¶ 19. We will not overturn a district court's evidentiary determinations absent a showing of abuse of discretion. *State v. Bingman*, 2002 MT 350, ¶ 31, 313 Mont. 376, 61 P.3d 153. However, to the extent an evidentiary ruling is based on interpretation of an evidentiary rule or statute, the review is de novo. *Derbyshire*, ¶ 19.

**DISCUSSION**

¶9    On appeal, Hardman contends the District Court made a series of erroneous evidentiary rulings, the sum of which necessitates a new trial. He argues further that under the Due Process Clause of the United States Constitution, the District Court's one-sided evidentiary rulings prevented him from effectively rebutting the State's case and presenting a defense, violating his right to a fair trial. We conclude the majority of the court's contested rulings were not error and therefore their aggregate does not warrant reversal. Since our holding on the first issue controls, we need not reach the constitutional argument. In his opening brief, Hardman lists six points of error by the District Court. We address each in turn.

4

### a.      Blattie's phone call to Hardman moments before the shooting

¶10     At 4:34 on the afternoon of the shooting, Hardman called Blattie but he did not answer.   Blattie called Hardman back moments later, and the two had a heated conversation.   Hardman sought to introduce the statements Blattie made during the conversation.   The court excluded the contents of the conversation on hearsay and relevancy grounds.  The court later clarified its ruling, citing *City of Red Lodge v. Nelson*, 1999 MT 246, 296 Mont. 190, 989 P.2d 300, for the proposition that "if it's an accident, evidence of the victim's prior conduct is irrelevant."  The court stated that Hardman was attempting to introduce the telephone conversation as justification for carrying a weapon with him when he went to Blattie's home.   However, Hardman's accidental shooting defense made Hardman's reason for carrying a weapon irrelevant.

¶11     Hardman contends the substance of the conversation and the statements made by Blattie prompted him to arm himself when approaching Blattie about the debt.  He further argued in chambers he intended to testify that he brought the gun with him, not because he planned to harm Blattie, but because he feared that Blattie would physically attack him when confronted about the debt.   Hardman contends the conversation was admissible under the "transaction rule" and that the evidence was not hearsay because it was not being asserted for its truth but rather to demonstrate the effect the words had on him.  The State argues these exceptions to the hearsay rule are inapplicable and regardless, the statements are irrelevant.

¶12     The record reflects that the District Court excluded the evidence on the ground it was irrelevant and did not qualify for admission under the transaction rule. Hardman argues that evidence as to why he armed himself is relevant to the mental state element of a deliberate homicide charge. He contends evidence that he was scared, and armed himself only as a deterrent, tends to make it less probable that Hardman's conscious object was to kill Blattie, or that he was aware of a high probability that his conduct of drawing the gun would cause Blattie's death. Absent evidence of the words exchanged during the phone conversation, he argues it seems more probable he armed himself with the intention of shooting Blattie.

¶13     "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M. R. Evid. 401. "All relevant evidence is admissible . . . Evidence which is not relevant is not admissible." M. R. Evid. 402. A district court has broad discretion to determine whether or not evidence is relevant. *State v. Matz,* 2006 MT 348, ¶ 34, 335 Mont. 201, 150 P.3d 367. Hardman testified the hammer of the gun was fanned inadvertently during the struggle and he did not intend to shoot Blattie. The District Court concluded that Blattie's statements during the phone call were irrelevant to a defense of accident.

¶14     In *City of Red Lodge*, we considered the appeal of a conviction for partner assault. The defendant attempted to introduce evidence of the victim's prior convictions for assault to show her intent to assault him and to show he had to use reasonable force

6

against her in his defense. *City of Red Lodge*, ¶ 7. He initially argued self-defense, but at trial "emphatically" contended he accidentally struck the victim. *City of Red Lodge*, ¶¶ 14, 18. The Court noted there was a tenuous basis for the defendant's claim he relied on the defense of self-defense at trial. *City of Red Lodge*, ¶ 18. The Court affirmed the conviction, holding that even if the defendant asserted self-defense, he had not established he knew of the victim's prior convictions at the time he struck her and therefore evidence of the convictions was irrelevant. *City of Red Lodge*, ¶¶ 19-20. Justice Trieweiler, specially concurring, added:

> [the defendant's] contention that he did not intend to strike her is inconsistent with a defense that he struck her in self-defense. Therefore, in spite of what he did or didn't know about her prior conduct at the time of the event which formed the basis for the charges against him, [the victim's] prior conduct was irrelevant. For this reason alone, I would affirm the judgment of the District Court.

*City of Red Lodge*, ¶ 22 (J. Trieweiler, concurring). The District Court relied on this language in concluding evidence of Blattie's statements immediately prior to the shooting was irrelevant. The District Court allowed Hardman to present evidence that provided context for Hardman's mental state at the time of the shooting and served to rebut the State's allegations Hardman purposely or knowingly killed Blattie. During his testimony, Hardman was permitted to describe the conversation as heated and that the subject of the debt owed was discussed. Moreover, he testified that he went to Blattie's home immediately thereafter to confront him about the money, and that he took a firearm with him in preparation for the encounter. Pastor Griggs testified that during Hardman's confession to him, Hardman told him that Blattie came out yelling and "slammed the

7

screen door," and that the yelling was a continuation of the phone call. Hardman testified Blattie's eyes were "very dark" and that he got so scared he lost control of his bladder. This evidence bolstered Hardman's contentions he brought the gun for security and the shooting was an accident.

¶15 We hold that, in light of the nature of Hardman's defense, the District Court did not abuse its broad discretion in excluding the statements as irrelevant. *Matz*, ¶ 34. Though Hardman was prohibited from testifying as to the exact words Blattie spoke during the conversation, he was able to introduce evidence about the nature of the exchange and why he brought the gun. Thus, Hardman was permitted to describe the conversation and how it related to the subsequent events in line with his defense. It was not error for the District Court to exclude the evidence as irrelevant.

¶16 Hardman also argues the evidence was admissible under the "transaction rule," § 26-1-103, MCA. Evidence that may be admissible under that rule is still subject to fact-specific balancing under Rule 403. *State v. Detonancour*, 2001 MT 213, ¶¶ 29-31, 306 Mont. 389, 34 P.3d 487. The District Court expressed concern over the lack of trustworthiness of Hardman's proffered hearsay testimony, since the prosecutor had no way of cross-examining him on Blattie's purported statements. It noted that the purpose of the evidence was to have the jury "infer the defendant relied upon what was said to him in taking his next steps." The trial court carefully weighed the probative value of the evidence against its attenuated relevance. Its exclusion of the evidence was not an abuse of discretion.

8

### b.    Impeachment of good character evidence

¶17    The State called Tab Moen to testify at trial. Moen was a friend of Blattie's and discovered Blattie's body. The State, referring to Blattie, asked, "what kind of guy was he?" Hardman did not object to the question. Moen responded, "[g]reat guy. I mean, you know, the little bit I knew him, he was a really good guy." In cross-examination, defense counsel asked, "would it change your opinion of Michael Blattie if you knew he was a meth user?" The State objected before Moen could answer. The court heard the parties' arguments on the matter in chambers. Defense counsel further sought to cross-examine Moen on whether his opinion would change if he knew Blattie was on probation for stolen goods. Moreover, counsel intended to introduce information that Moen and Blattie used drugs together at Blattie's home. Counsel for the State objected on all fronts, citing M. R. Evid. 404 and 405(b). The court sustained the objection, ruling that some of the character evidence would be admissible if there was a proper foundation laid on a self-defense theory, but that "404 simply says this kind of evidence with regard to the victim does not come in unless it meets the criteria set forth in 404." Moreover, the court noted allowing this line of questioning "would be more prejudicial than probative as to whether the defendant committed this homicide." Hardman argues this ruling was error.

¶18    Generally, evidence of a person's character or a trait of character is inadmissible to prove action in conformity therewith on a particular occasion. M. R. Evid. 404. However, the rule provides an exception pertaining specifically to admissibility of evidence of the victim's character in certain cases:

Character of victim. Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case or in an assault case where the victim is incapable of testifying to rebut evidence that the victim was the first aggressor.

M. R. Evid. 404(2). When character evidence is admissible, M. R. Evid. 405 governs the method of proving character, either as reputation or opinion evidence, or specific instances of conduct. Character evidence must first be deemed admissible under Rule 404 before Rule 405 applies. *State v. Daniels*, 2011 MT 278, ¶ 23, 362 Mont. 426, 265 P.3d 623 ("when character evidence is admissible, Rule 405 provides the methods of proving character.").

¶19　Hardman contends that Rule 404 is explicitly limited to prohibiting introduction of character evidence "for the purpose of proving action in conformity therewith." In this instance, he argues, the defense was not offering evidence of Blattie's character to prove conformity, but rather to impeach Moen's testimony that Blattie was a "really good guy." Hardman contends that under M. R. Evid. 105, evidence which is inadmissible for one purpose may be admissible for another. He argues the evidence should have been admitted, with a cautionary instruction to the jury that the evidence was only for impeachment purposes, and not to be considered as actions in conformity with Blattie's character. Hardman further argues he should have been permitted to cross-examine Moen on his drug use with Blattie as a means to show bias and question his credibility.

¶20　We have held a defendant must first lay a foundation that he acted in self-defense before evidence of the victim's character will be admitted. *State v. Logan*, 156 Mont. 48,

10

64-65, 473 P.2d 833, 842 (1970); *State v. Cartwright*, 200 Mont. 91, 104, 650 P.2d 758, 764-65 (1982). "The determination of the adequacy of the foundation for the admission of evidence is within the discretion of the trial court." *State v. Weeks*, 270 Mont. 63, 75, 891 P.2d 477, 484 (1995). We stated in *Cartwright* that, "until such time as the defendant took the stand and admitted the killing, the issue of self-defense was not joined at the trial." *Cartwright*, 200 Mont. at 104, 650 P.2d at 764-65 (quoting *Logan*, 156 Mont. at 65, 473 P.2d at 842). Moreover, we recently reiterated that evidence of the character of a victim is admissible where the "character of the victim relates to reasonableness of force used by the accused in self defense." *State v. Branham*, 2012 MT 1, ¶ 11, 363 Mont. 281, 269 P.3d 891. The interplay between a defense of self-defense and evidence of the victim's character is thus critical to the analysis. For a victim's character trait to be "pertinent," it must relate to the defendant's claim of self-defense—a claim not raised here. Blattie's character was not "pertinent" when offered to challenge the credibility of the State's witness.

¶21 Hardman's invocation of M. R. Evid. 105 is unavailing. A primary concern for a court in determining limited admissibility is whether the issue for which the evidence is offered is actually in controversy. A district court must consider:

> whether the party seeking to offer evidence of limited admissibility for a proper purpose has manipulated the presentation of evidence in order to manufacture a controversy and permit the party to waft otherwise inadmissible evidence before the jury... [the purported use of evidence for impeachment purposes] can sometimes represent a veiled attempt to tempt the jury to use the evidence for its impermissible purpose.

11

David P. Leonard, *The New Wigmore: Selected Rules of Admissibility* 60-64 (rev. ed., Aspen Publishers 2002). Moen's testimony provided very little information as to Blattie's character. Moen primarily was questioned about his visit to Blattie's home on the day of the shooting and his discovery of the body. Impeachment of Moen's lone statement that Blattie was a "good guy" would have introduced evidence of Blattie's bad character, which was not a proper matter for the jury's consideration. Hardman cannot use his failure to object to the State's question as a backdoor to introduce otherwise inadmissible testimony not at issue in the case.

¶22 The District Court determined evidence of Blattie's character was inadmissible under Rule 404 absent a claim of self-defense. Thus, impeachment pertaining to Blattie's character was likewise inadmissible "until such time as [Hardman] took the stand and admitted the killing." Moreover, a district court may exercise its discretion to exclude otherwise relevant evidence if its probative value is outweighed by a danger of unfair prejudice. M. R. Evid. 403. In *State v. Passmore*, 2010 MT 34, ¶¶ 57-60, 355 Mont. 187, 225 P.3d 1229, we considered whether testimony regarding a sexual assault victim's prior inconsistent statement on an arguably collateral matter was admissible to challenge the victim's credibility. The defendant sought to introduce witness testimony to contradict the victim's testimony denying a statement she allegedly made regarding a sexual fantasy, but the evidence offered did little to establish that the victim had lied in her testimony about the defendant's unlawful sexual acts against her. *Passmore*, ¶¶ 52, 53, 63. Although the evidence arguably undermined the witness's credibility, we

12

concluded that the admissibility of contradiction evidence ultimately is governed by M. R. Evid. 401 and 403. *Passmore*, ¶ 61. We held that the evidence offered by the defendant had limited probative value and was outweighed by the danger of unfair prejudice and confusion of the issues. *Passmore*, ¶ 63. The evidence offered by Hardman likewise carried little probative value when balanced against its potential for prejudice and confusion of the issues. The District Court acted within its discretion in excluding the evidence as impermissible under M. R. Evid. 404 and because of a danger of unfair prejudice under M. R. Evid. 403.

### c. Hardman's other bases for fearing Blattie

¶23 Hardman sought to introduce evidence that he was fearful of Blattie because he knew from various sources that Blattie could potentially blow up or get very angry if confronted. The District Court again ruled that unless Hardman admitted killing Blattie and raised a justifiable use of force defense, evidence regarding his fear of Blattie was irrelevant. Hardman argues Blattie's history and Hardman's fear of him were relevant because they established his own mental state. In other words, absent evidence of Hardman's fear, evidence that Hardman deliberately took the gun to Blattie's home makes it seem more probable that Hardman intentionally shot Blattie. Again, Hardman contends the evidence was not admitted for the purpose of proving Blattie's character and should have been admitted to rebut the State's contentions that Hardman went over to Blattie's house specifically to kill him.

13

¶24 As discussed above, Hardman was permitted to testify on re-direct why he brought the gun with him. He testified he was afraid Blattie would get angry about the money, that a physical altercation might arise, and that he is "not a fighter." In light of Hardman's accident theory, the District Court did not misapply Rule 404 or abuse its discretion in excluding further evidence of Hardman's fear of Blattie.

### d.     Asked and answered

¶25 Jennifer Couch, Hardman's stepdaughter-in-law, with whom he was residing at the time of the shooting, was called as a prosecution witness at trial. Couch testified about weapons in their home, Hardman's financial difficulties, and how he had come to live with her and her husband. During a line of questioning about drug use in the home, the prosecutor asked her whether Hardman possessed a medical marijuana card. The examination went as follows:

> Q. Did the defendant have a medical marijuana card?
>
> A. Yes.
>
> MR. SCOTT: I object to this as relevancy, to character evidence. I don't see --
>
> THE COURT: The question has been asked and answered. You're going to have to object a little more quickly. Overruled.

Hardman protests that defense counsel objected immediately after the witness said "yes" and the only way counsel could have objected more quickly would have been to beat the witness's monosyllabic answer. He argues the District Court abused its discretion under M. R. Evid. 611(a), which mandates a district court "exercise reasonable control over the

14

mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." Though Hardman cites the "well-settled practice" of striking improper testimony and giving a cautionary instruction to the jury, he did not request such a remedy in this instance.

¶26 "The court has a duty to conduct the trial in a speedy and fair manner and has a great amount of discretion in so doing." *State v. Insua*, 2004 MT 14, ¶ 36, 319 Mont. 254, 84 P.3d 11 (quoting *State v. Dickens*, 198 Mont. 482, 486, 647 P.2d 338, 341 (1982)). We note the District Court handled a similar objection by the State in the same fashion. When defense counsel cross-examined Pastor Griggs, the following exchange occurred:

> Q. And on your single-action pistol, you could pretty much fan the hammer on your weapon as well?
>
> A. I believe so. I've never done it, but I believe it would work that way.
>
> MR. PETAK: Your Honor, it's calling for speculation. I ask –
>
> THE COURT: It's been asked and answered.

Our reading of the transcript indicates the court was fair and even-handed in managing the trial. The District Court did not abuse its discretion in exercising reasonable control over the proceedings as required by M. R. Evid. 611(a).

### e. Medical opinion testimony

¶27 Hardman makes two arguments as to the exclusion of medical opinion testimony from two doctors. First, following his suicide attempt, Hardman was treated by Dr. Samuel Paczkowski, an emergency room physician in Billings. After his initial admission, Hardman's care was assigned to a Dr. Blossom, who was not listed as a trial witness by either party. In his direct testimony, Dr. Paczkowski testified Hardman's main complaint upon admission to the ER was "altered mentation." On cross-examination, defense counsel asked Dr. Paczkowski whether, after reviewing Dr. Blossom's subsequent report, he was able "to form an opinion as to what Jeff's condition was on that day." Counsel for the State objected, arguing hearsay and lack of foundation. The court sustained the objection, stating that defense counsel would need to establish that Dr. Paczkowski relied upon Dr. Blossom's report in treating Hardman for the evidence to be admissible.

¶28 On appeal, Hardman argues the defense sought to elicit the testifying doctor's opinion as to the seriousness of Hardman's suicide attempt, not the other doctor's report. Hardman contends M. R. Evid. 703 permitted Dr. Paczkowski to opine as an expert based on a reading of Dr. Blossom's report. That rule provides:

> [t]he data in a particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in a particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

16

Hardman never established, however, that Dr. Paczkwoski was qualified to provide an expert opinion on a patient's suicidal condition as required by M. R. Evid. 702, nor did he inform the District Court he was seeking such an opinion. Generally, we will not review an issue that was not properly preserved for appeal because the objecting party never gave the trial court an opportunity to address and correct perceived errors. *State v. Johnson*, 2011 MT 286, ¶ 14, 362 Mont. 473, 265 P.3d 638. M. R. Evid. 703 does not permit an expert to simply transmit the out-of-court opinion of another without adding any analysis. *Weber v. BNSF Ry. Co.*, 2011 MT 223, ¶¶ 37-39, 362 Mont. 53, 261 P.3d 984. Dr. Paczkowski did testify Hardman had to be intubated to prevent him from dying, and the jury was given sufficient information to show the seriousness of Hardman's suicide attempt. The District Court did not abuse its discretion in excluding Dr. Paczkowski's opinion.

¶29 Secondly, Hardman sought to corroborate his testimony that Blattie was in a rage by introducing evidence about Blattie's autopsy and the presence of methamphetamine in his blood. During cross-examination by defense counsel, the forensic pathologist who performed Blattie's autopsy, Dr. Thomas Bennett, testified that he had sent blood to the crime lab for testing to see if anything in the blood would help make a determination of what happened. Defense counsel asked about the results of the blood test and the State objected on hearsay grounds. The court sustained the objection.

¶30 Hardman contends that under M. R. Evid. 703 and 702, the defense could elicit an opinion from Dr. Bennett about the condition of Blattie's physiology moments before his

17

death even if his medical opinion relied in part upon laboratory data. Moreover, he argues that under M. R. Evid. 705, he was permitted to cross-examine Dr. Bennett regarding the underlying facts or data which formed the basis of his opinion. Since Dr. Bennett testified that blood data was "a standard part of [his] autopsy," Hardman contends cross-examination on the data was permissible.

¶31 Hearsay is evidence of an out-of-court statement offered to prove the truth of the matter asserted. M. R. Evid. 801. Hardman sought to introduce evidence from the blood data that Blattie was under the influence of methamphetamine at the time he encountered Hardman on the porch. Out-of-court statements to that effect are hearsay and inadmissible unless an exception applies. M. R. Evid. 803(6) provides the "business records exception" to the hearsay rule, which permits admissibility of records of regularly conducted activity, including blood tests. However, the party offering the evidence must establish two primary foundational facts before the evidence is admissible: "(1) the records must have been made or transmitted by a person with knowledge at or near the time of the incident recorded; and (2) the record must have been kept in the course of a regularly conducted business activity." *State v. Baze*, 2011 MT 52, ¶ 18, 359 Mont. 411, 251 P.3d 122 (quoting *U.S. v. Ray*, 920 F.2d 562, 565 (9th Cir. 1990)). Such a showing must be made "by the testimony of the custodian or other qualified witness." M. R. Evid. 803(6).

¶32 Dr. Bennett was not the party who performed the blood test and Hardman does not argue he was a custodian or otherwise qualified witness who could provide the

18

foundation for its admission into evidence. Hardman did not call any other witness from the crime lab to lay the foundation for the blood test. In any event, the jury heard testimony from Dr. Bennett that Blattie's condition at death was consistent with methamphetamine use, which can cause violent outbursts, lending corroboration to Hardman's theory of Blattie's enraged state at the time of their encounter. There was no error in the District Court's ruling.

### f. Photo of Hardman holding a gun in California

¶33 During Couch's testimony, she identified Hardman in a photograph where he was holding a gun at a California shooting range. The court admitted the photograph into evidence over defense counsel's relevancy objection. On appeal, Hardman contends the photograph was irrelevant because the State did not link the weapon in the photograph to the crime, nor did its admission say anything about what gun Hardman used on October 15, 2009, or whether he purposely or knowingly killed Blattie. The State concedes the photograph was irrelevant because it was remote and the prosecutor failed to tie the gun in the photograph to the gun used in the shooting. However, it argues the admission of the photograph was harmless error.

¶34 Error is harmless when the State demonstrates there is "no reasonable possibility that the inadmissible evidence might have contributed to the conviction." *State v. Van Kirk*, 2001 MT 814, ¶ 47, 306 Mont. 215, 32 P.3d 735. Hardman admitted taking a gun to Blattie's house, drawing the gun, and, whether accidentally or otherwise, shooting Blattie. Defense counsel and Hardman conducted a demonstration of the alleged

19

accident, with an unloaded gun, during Hardman's testimony. Hardman also admitted burying the gun after the incident. Based on the weight of evidence presented at trial, and Hardman's own admissions, we cannot conclude there was a reasonable probability that this lone photograph contributed to the conviction.

## CONCLUSION

¶35 The cumulative error doctrine mandates reversal of a conviction where numerous errors, when taken together, have prejudiced a defendant's right to a fair trial. *State v. Giddings*, 2009 MT 61, ¶ 100, 349 Mont. 347, 208 P.3d 363. Having found no abuse of discretion in all but one of the District Court's evidentiary rulings, cumulative error does not require reversal of Hardman's conviction. Since we reject Hardman's argument that the trial was "starkly one-sided," we do not further consider his due process claim.

¶36 The judgment is affirmed.

/S/ BETH BAKER

We concur:

/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ JIM RICE
/S/ BRIAN MORRIS