JUSTICE BAKER,
dissenting.
¶24 I agree that it was error under M. R. Evid. 803(8) to admit the PLB report into evidence at trial but, based on a thorough review of the record, I would conclude that the District Court did not abuse its discretion in admitting evidence of Boude’s termination and that Boude has not met his burden of proving prejudice from admission of the report.
¶25 The analysis should begin by acknowledging the limited scope of an appellate court’s review of a jury verdict in a civil case. We repeatedly have recognized that we “ ‘must exercise the greatest self-restraint in interfering with the constitutionally mandated processes of jury decision.’ ” Seltzer v. Morton, 2007 MT 62, ¶ 94, 336 Mont. 225, 154 P.3d 561 (quoting Kneeland v. Luzenac Am., Inc., 1998 MT 136, ¶ 53, 289 Mont. 201, 961 P.2d 725). Because of the deference accorded a jury’s verdict, the law is clear that a district court will not be reversed *40 for improperly admitting evidence unless “substantial prejudice to the complaining party [is] shown.” Green v. Green, 181 Mont. 285, 293, 593 P.2d 446, 451 (1979). In other words, “a reversal cannot be predicated upon an error in admission of evidence, where the evidence in question was not of such character to have affected the result.” In re A.N., 2000 MT 35, ¶ 55, 298 Mont. 237, 995 P2d 427; Mason v. Ditzel, 255 Mont. 364, 371, 842 P.2d 707, 712 (1992); Lauman v Lee, 192 Mont. 84, 90, 626 P.2d 830, 834 (1981).
¶26 Liability in a FELA claim is premised on negligence. The threshold issue Boude was required to prove was that Union Pacific breached its duty to provide him with a reasonably safe workplace. “FELA does not require an employer to exercise the highest degree of care, but only the same degree of care as an ordinary, reasonable person would exercise in similar circumstances.” Martinez v. Union Pac. R.R. Co., 82 F.3d 223, 228 (8th Cir. 1996). Under the FELA causation standard, if the Railroad breached its duty, it is liable if its negligence “played a part-no matter how small-in bringing about the injury.” Weber v. BNSF Ry. Co., 2011 MT 223, ¶ 26, 362 Mont. 53, 261 P.3d 984. The jury in this case answered “no” to the threshold question on the special verdict form, whether the Union Pacific was negligent, and thus did not answer any other questions in reaching its final verdict.
¶27 Although the Court discusses without distinction the PLB report and Boude’s termination, it is important to evaluate the two items of evidence separately since their admissibility is governed by different rules of evidence.
Boude’s Termination from Employment
¶28 The Union Pacific terminated Boude’s employment in this case because he did not report the July 29 incident for over four months, in violation of the railroad’s strict policies on prompt reporting of injuries. Tracy Brown, Union Pacific’s manager of train operations at the time, testified that when Boude first contacted him in October about his neck pain, Boude assured him it was not a work-related injury. Approximately three weeks later, Boude called Brown to advise him that the injuries were in fact work-related. Brown attempted to set a meeting with Boude to review the incident with him and complete the required paperwork, but Boude put him off. Boude did not meet with Brown, but later filed the incident report form with help from an attorney. Boude did not object to this testimony at trial, and concedes-as does the Court (Opinion, ¶ 22)-that his “dishonest statements to management” were relevant and admissible at trial. *41 Boude argued in his motion in limine, however, that evidence of his termination for that dishonesty should be excluded because it was not relevant and “would only confuse the jury as to the amount of damages,” in particular his claim for lost future earnings. On appeal, Boude again emphasizes that the fact of termination did not, as a matter of law, affect the quantum of damages and the evidence “only confused the jury as to the measure of Plaintiffs damages.” (Emphasis added.)
¶29 A district court has broad discretion to determine whether or not evidence is relevant. State v. Hardman, 2012 MT 70, ¶ 13, 364 Mont. 361, 276 P.3d 839. Courts in FELA cases generally have held that a worker’s termination from employment does not preclude his claim for lost earnings if the loss of earnings is alleged to have resulted from the worker’s injuries and not from an alleged wrongful termination. Martinez, 82 F.3d at 227; State ex rel. Union Pac. R.R. v. Dierker, 961 S.W.2d 816, 823 (Mo. 1998); Torres v. Union Pac. R.R. Co., 2006 U.S. Dist. LEXIS 84333, *4-5 (E.D. Ca. 2006); Graves v. BNSF Ry. Co., 77 F. Supp. 2d 1215, 1219 (E. D. Okla. 1999). Based on this authority, the District Court agreed with Boude that he was entitled to present evidence of lost wages beyond the date of his termination. Boude argues that Union Pacific nonetheless used the evidence of his termination to urge the jury not to award future wages for job he no longer had.
¶30 The Eighth Circuit U.S. Court of Appeals recently clarified that its decision in Martinez did not create a firm rule that a railroad employee’s termination could never be admissible in the employee’s FELA case. Wright v. Ark. & Mo. R.R. Co., 574 F.3d 612, 618-19 (8th Cir. 2009). The court distinguished Martinez and upheld the admission of the plaintiffs termination where it was offered to counter the impression that his injuries were the only reason he no longer worked for the railroad. Wright, 574 F.3d at 619. Here, given the testimony at trial and in light of the trial court’s broad discretion in evidentiary ridings, admission of Boude’s termination likewise was not reversible error.
¶31 Both Boude and his wife Amber testified that he is in constant pain that has substantially and permanently affected his ability to engage in daily living activities. Boude testified he has been unable to work because of his neck condition and that he had intended to work for the railroad until he reached full retirement eligibility at age 67. Like the court in Wright, I would conclude that the district court did not abuse its discretion in admitting evidence of termination where to *42 exclude it could “leave the jury with the impression that physical limitations from the accident were the only reason [Boude] no longer worked at [Union Pacific].” Wright, 574 F.3d at 619.
Public Law Board Report
¶32 I concur for the reasons stated by the Court that the PLB report constituted hearsay to which the public records exception provided in M. R. Evid. 803(8) did not apply. The Court emphasizes that the PLB report was not relevant to the questions whether Union Pacific was negligent and whether the negligent performance of the helper/pusher maneuver caused injury to Boude. (Opinion, ¶ 19.) It is this very issue on which we should focus in determining whether admission of the report prejudiced Boude’s substantial rights at trial. The report went only to whether Boude’s delay in reporting the incident justified termination because he violated Union Pacific’s strict policies on timely reporting. The report contained no finding or conclusion that Boude was “dishonest,” but did conclude that his delay in reporting “wrongly deprived the Carrier of timely investigation” of the incident and the ability to determine any need to correct workplace hazards. The PLB therefore concluded that Boude’s action was “a major violation of conduct necessary in an employee-employer relationship as concerns such matters.” Boude did not dispute the relevancy of his delay in reporting and there was considerable testimony at trial about the reasons for the delay. Boude testified he was afraid to report his injury based on a railroad policy that allowed employees to be fired for so much as “breaking a fingernail,” but he was contradicted by the other three railroad employees on site that day, each of whom rejected this notion and stated the only thing they had to be afraid of was failure to report an injury in a timely manner.
¶33 With respect to the threshold question whether the railroad was negligent by failing to provide a reasonably safe workplace, the evidence from Paul Belcher, the engineer in the locomotive in which Boude was riding, corroborated Boude’s theory that there was a “jolt” from the slack action that was “one of the more severe” run-ins he had experienced. However, he testified that Boude never made contact with the windshield and never complained to Belcher of any pain or injury until the date of his last day of work in October 2006. Most of the testimony on the issue of negligence centered on whether the engineers had sufficient training on the pusher/helper maneuver and on whether the personnel operating the lead locomotive had communicated adequately with Belcher on the maneuver that day. All three of the other railroad employees involved in the “run-in” testified *43 they did not think the procedure that day was unsafe.
¶34 The record shows that Boude’s honesty was called into question by a significant amount of evidence contradicting his claim that the slack action on the date in question caused his neck problems. None of the three other railroad employees on site recalled Boude saying anything that day about being injured or in pain. The medical evidence showed that Boude had a history of cervical spine injuries dating from his work as a police officer. In 1998, his police car was rammed by a suspect during a car chase and he had discomfort in his neck as a result. In 2003, he was helping to carry an obese woman down a flight of stairs when he twisted his leg and felt a pulling in the right shoulder. Pain in his neck resulted and he ultimately was diagnosed with a herniated disc, for which he underwent surgery. The report from a 2004 examination indicated a preexisting degenerative condition even earlier, with Boude noting he was hospitalized at age 12 for neck pain with x-rays said to reveal an unusual calcium deposit in the cervical spine.
¶35 When he applied for work at the Union Pacific, Boude disclosed the prior neck surgery and herniated disc on his medical form. Medical records from the Fall of 2006 (near the time he made his report of the July 2006 incident to Union Pacific) show that Boude reported on at least two occasions that his neck pain symptoms had started in November 2005. He reported to his regular doctor in October 2006 that his neck stiffness and pain had been ongoing in the “last 10 months,” and did not tell him about the July 2006 incident. Boude also advised the neurologist that “working on a train on a bumpy route since [November 2005] caused his symptoms to return,” but apparently did not mention the July 2006 incident to him, either. A phone record from his doctor’s office on October 31, 2006, showed that Boude called back later to ask if his back problem “from last visit could be caused by work. He was told that because of his history and disc disease to 2003 it could not be determined if work was the cause.” It was pointed out at trial that Boude had consulted with an attorney prior to seeing the doctor-recommended by the attorney-who ultimately concluded that Boude’s neck pain was related to the slack-action incident.
¶36 Our two prior cases considering the erroneous admission of a report in violation of Mont. R. Evid. 803(8)(c) have reached different conclusions as to whether the report’s admission was reversible error, based on the evidence and issues in the case. Both cases involved a report of findings from the Human Rights Bureau. In Stevenson, ¶¶ 7, 43-44, we held that Stevenson was clearly prejudiced by the District *44 Court’s admission of the HRB’s finding of “no reasonable cause to believe unlawful age discrimination occurred” in his case. The very issue before the jury was whether the defendant had discriminated against Stevenson on the basis of age. In Crockett, 234 Mont. at 93-96, 761 P.2d at 817-19 (1988), the district court, in a non-jury case, had found that the plaintiff established a prima facie case of employment discrimination consistent with the HRB’s “reasonable cause” finding, but concluded that the defendant proved a legitimate nondiscriminatory reason for failing to hire the plaintiff. Under these circumstances, we held that the District Court’s consideration of the HRB’s reasonable cause finding for the plaintiff was not prejudicial error. 234 Mont. at 99, 761 P.2d at 820.
¶37 Applying the rationale of these cases in the context of the record here, I would conclude that Boude has not carried his burden of proving prejudice to his substantial rights from the erroneous admission of the evidence. The PLB report, unlike the report erroneously admitted in Stevenson, did not go to the very issue the jury was considering but to a collateral issue (lack of Boude’s timely report) on which there concededly was other relevant evidence presented to the jury. The evidence therefore was both cumulative and collateral to the central issue in the case-Union Pacific’s failure to provide a reasonably safe place to work-on which the testimony was overwhelmingly in the railroad’s favor. The safety of the workplace was not an issue about which Boude’s honesty was particularly in question, since Belcher corroborated his version of a significant run-in event. What did draw his honesty into question was Boude’s claim that the event caused him injury-an issue the jury never even reached and on which there was overwhelming evidence to the contrary. Whether admission of the PLB report affected Boude’s damage claim is irrelevant.
¶38 After hearing seven days of testimony from sixteen different witnesses, the jury deliberated for less than two hours before returning an 11-1 verdict for Union Pacific. On appeal, Boude failed to make any response to Union Pacific’s arguments that, based on the extensive evidence presented at trial, Boude was not prejudiced by admission of the PLB report. Boude also failed to offer any rebuttal to Union Pacific’s assertion that he could not have been prejudiced because the jury never reached the issue of causation or damages. Quite clearly, the PLB report should not have been admitted, and Union Pacific did not need the evidence to defend the case. In light of the record and the arguments presented on appeal, however, I would conclude that Boude *45 has not carried his burden of proving prejudice to his substantial rights from the erroneous admission of the report. Seltzer, ¶ 65. I would therefore affirm the jury’s verdict in favor of Union Pacific. Although the Court does not reach the other issues Boude raised on appeal, I would affirm on those issues as well.